Case 2:19-cv-00376   Document 42   Filed on 07/02/20 in TXSD   Page 1 of 19

United States District Court
Southern District of Texas
**ENTERED**
July 02, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| JULIAN G SILVAS, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 2:19-CV-376 |
| § | |
| LT HINOJOSA, *et al*, § | |
| § | |
| Defendants. § | |

# MEMORANDUM AND RECOMMENDATION
# TO DISMISS CERTAIN CLAIMS AND TO RETAIN CASE

Plaintiff Julian G. Silvas, an inmate appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§1915(e)(2), 1915A.

For purposes of screening, Plaintiff has stated an excessive force claim against **Sgt. Brown** in his individual capacity. Accordingly, it is respectfully recommended that this claim be **RETAINED.** The undersigned will order service on **Sgt. Brown**.

For the reasons set forth below, the undersigned further recommends that: (1) Plaintiff's claims against all Defendants in their official capacities be **DISMISSED**; (2) Plaintiff's claim asking for criminal charges to be brought against Sgt. Brown be **DISMISSED**; and (3) Plaintiff's remaining claims against all Defendants be **DISMISSED with prejudice** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

1 / 19

## I. JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II. PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is a pretrial detainee currently housed at the Nueces County Jail (NCJ) in Corpus Christi, Texas. Plaintiff's claims in this lawsuit, however, occurred in connection with his prior stay at the NCJ. Subsequent to the filing of this action, Plaintiff filed three additional prisoner civil rights action, Case Nos. 2:19-cv-401, 2:20-cv-14, and 2:20-cv-30. In all four cases, Plaintiff raised claims concerning the conditions of his confinement at the NCJ. All four cases were consolidated into one case. (D.E. 15). The undersigned then directed Plaintiff to file a Comprehensive Amended Complaint and present all his claims therein. (D.E. 16).

On April 7, 2020, Plaintiff filed his Comprehensive Amended Complaint. (D.E. 27). He sues the following prison officials from the NCJ: (1) Lt. Hinojosa; (2) Sgt. Perez; (3) Sgt. Syler; (4) unknown medical staff; (5) Sgt. Warner; (6) Lt. Gomez; and (7) Sgt. Brown. (D.E. 27, p. 3). Plaintiff seeks compensatory damages for his pain and suffering as well as his felonies removed from his record. (D.E. 27, p. 5). Plaintiff subsequently filed a supplemental complaint naming Sgt. Wilson as well as Defendants Hinojosa, Perez, and Brown.

A *Spears*[1] hearing was conducted on March 10, 2020. The following representations were made either at the *Spears* hearing or in Plaintiff's amended and supplemental complaints: Plaintiff is 36 years old, stands 5'10", and weighs 175 pounds. Plaintiff takes blood pressure and nerve medications. (D.E. 35, p. 33).

Plaintiff first arrived at the NCJ in late September/early October, 2019, upon being taken into custody on a parole violation. (D.E. 35, pp. 3-4). On February 24, 2020, Plaintiff was released from the NCJ on parole. He is currently back in custody at the NCJ pursuant to a charge of misdemeanor assault. (D.E. 35, pp. 4-5).

On September 29, 2019, Plaintiff was removed from the "trustee tank" area of the NCJ by Sgt. Perez and taken to "max housing" for high-risk inmates. (D.E. 35, p. 6). Plaintiff was removed from the "trustee tank" because he stuck his finger out at the camera located in the gym area. (D.E. 35, p. 8). Lt. Hinojosa made the decision to place Plaintiff in "max housing." This decision was supported by Sgt. Perez.

Plaintiff lived in "max housing" for three weeks. (D.E. 35, pp. 7-8). During his time in "max housing," Plaintiff was "tortured" by the other 7-8 inmates in "max housing" who did not allow him to be fed on occasion or to use the phone. (D.E. 35, pp. 8, 11). Plaintiff missed around seven or eight meals while in "max housing" over a three-week period. (D.E. 35, p. 12). The officers in "max housing" let the other inmates control the area. Nevertheless, Plaintiff testified that he was not physically injured during this time. (D.E. 35, p. 13).

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

Sgt. Perez caused Plaintiff to lose his commissary rights while he was placed in "max housing." Sgt. Perez also retaliated against Plaintiff by not helping Plaintiff and denying him every request he made. (D.E. 35, p. 15). The actions taken by Sgt. Perez caused him emotional but not physical injury. (D.E. 35, pp. 15-16).

After leaving "max housing," Plaintiff had conversations with Sgt. Syler. This defendant then harassed Plaintiff and placed him on suicide watch on four to five different occasions. (D.E. 35, pp. 16-17). Plaintiff was forced to wear a green "costume" or "suit" during the times he was placed on suicide watch. Plaintiff was then placed in a cold cell for 24 hours a day until being seen by the mental health department. (D.E. 35, p. 18). Plaintiff spent two to three days on suicide watch on each occasion. (D.E. 35, p. 19). Plaintiff was not physically injured while on suicide watch. (D.E. 35, pp. 19-20).

Plaintiff complains that Sgt. Warner caused inmates to fear him. At some point, Sgt. Warner learned about certain identifying information regarding Plaintiff (either a CID or PIN number), which he passed onto other inmates. (D.E. 35, pp. 21-22). The actions taken by Sgt. Warner resulted in Plaintiff having around $10 stolen from his trust fund account. Plaintiff learned about Sgt. Warner's actions through other inmates. These inmates also verbally harassed Plaintiff the whole time he was in jail.

On one occasion, an officer subordinate to Lt. Gomez assaulted and used a taser on Plaintiff. Plaintiff confronted Lt. Gomez, who did nothing to help the situation. (D.E. 35, p. 24). Plaintiff denied that he attacked the officer first. Plaintiff was never physically harmed by Lt. Gomez.

With respect to another incident occurring on December 14, 2019, Sgt. Brown assaulted Plaintiff by slamming Plaintiff against the wall and to the ground as well as punching Plaintiff several times. Plaintiff did not fight back or otherwise resist Sgt. Brown. Plaintiff suffered a busted lip, numerous bumps and bruises on his head, and a cracked tooth. (D.E. 35, pp. 26, 28). Sgt. Brown's actions caused Plaintiff to bleed heavily from his mouth. Plaintiff was brought to medical following the assault, examined, and patted down. (D.E. 35, pp. 27, 36).

During his time at the NCJ, Plaintiff filed 100-150 grievances between September 2019 and February 24, 2020, complaining about the conditions of his confinement. Sgt. Wilson, the grievance officer, failed to do her job and properly respond to Plaintiff's numerous grievances. (D.E. 35, p. 31). Sgt. Wilson did not provide Plaintiff with any relief on any of the grievances submitted.

Other than living in "max housing," Plaintiff spent his time at the NCJ in a lockdown facility (ad-seg) until he was released on February 24, 2020. Plaintiff experienced difficulties in being seen by medical due to his placement in ad-seg. Plaintiff was seen by medical on five or six occasions between September 2019 and February 24, 2020. Plaintiff believes that he should have been taken to the hospital after being assaulted by Sgt. Brown to check for the possibility of a concussion. (D.E. 35, p. 35). Following the assault, Plaintiff's head hurt for four to five days and his bleeding mouth closed after an unspecified period of time. (D.E. 35, p. 37).

Plaintiff could not recall the names of any of the medical officials who prevented him from visiting medical. (D.E. 35, p. 35). Plaintiff generally sought medical attention

for his blood pressure and to attend to a twisted foot. (D.E. 35, p. 36). Plaintiff acknowledged that NCJ medical doctors prescribed him blood pressure and nerve medications. (D.E. 35, p. 38). Plaintiff does not believe that he was harmed by any action taken by the NCJ doctors. Some of the NCJ nurses acted rudely toward Plaintiff. (D.E. 35, p. 39). However, Plaintiff was not injured by any action taken by these nurses.

Plaintiff clarified at the *Spears* hearing that he seeks compensatory damages for his suffering as well as justice in the form of having criminal charges brought against Sgt. Brown. (D.E. 35, p. 40-41).

### III.   LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly

baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id*.

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties.

*Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

## IV. DISCUSSION

### A. Official Capacity Claims

Suits against individuals in their official capacities "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009) (internal quotations and citation omitted). Thus, to the extent Plaintiff seeks to sue Defendants in their official capacities, it is effectively a suit against the officials' office, Nueces County. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

Even if the Court were to substitute Nueces County on behalf of Defendants in their official capacities, Plaintiff would not be able to state a § 1983 claim against Nueces County. A municipality is liable for the constitutional violations of its employees only if the alleged constitutional deprivations resulted from municipal policy. *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978). *See also Zarnow v. City of Wichita Falls, Texas*, 614 F.3d 161, 166 (5th Cir. 2010) (noting that a municipality may not be subject to liability merely for employing a tortfeasor; liability requires deliberate action attributable to the municipality that is the direct cause of the alleged constitutional violation). Liability of a municipality under § 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. *Monell,* 436 U.S. at 694; *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

Plaintiff fails to cite any county policy or practice that resulted in the violation of

his constitutional rights. Accordingly, it is respectfully recommended that Plaintiff's claims against Defendants in their official capacities be dismissed.

### B. Criminal Charges

In addition to monetary relief, Plaintiff clarified at the *Spears* hearing that he seeks justice in the form of having criminal charges brought against Sgt. Brown. (D.E. 35, p. 40-41). Prisoners, however, have no constitutional right to compel the criminal prosecution of someone else. *Hicks v. Bingham*, No. No. 6:18cv308, 2018 WL 6238003, at *3 (E.D. Tex. Sept. 21, 2018) (citing *Oliver v. Collins*, 914 F.2d 56 (5th Cir. 1991)). Private citizens lack any justicially cognizable interest in prosecuting individuals. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Thus, an individual cannot seek criminal prosecution even if he or she was the victim of a criminal offense committed by another. *Sattler v. Johnson*, 857 F.2d 224, 227 (4th Cir. 1988). Because Plaintiff cannot pursue criminal charges being brought against Sgt. Brown in this civil rights action, it is respectfully recommended that his claim seeking such charges be dismissed.

### C. Physical Injury Requirement

Plaintiff claims that: (1) Lt. Hinojosa violated his constitutional rights by placing him in "max housing" for several weeks, where Plaintiff was denied phone privileges and meals on occasion; (2) Sgt. Perez violated Plaintiff's constitutional rights by supporting Lt. Hinojosa's decision to place Plaintiff in "max housing," denying him commissary privileges, and retaliating against Plaintiff in general; and (3) Sgt. Syler harassed Plaintiff and forced Plaintiff to be placed on suicide watch on several occasions. With regard to these claims, however, Plaintiff does not allege that he suffered physical injury.

The PLRA, which governs this action, precludes an action for compensatory damages "for mental and emotional injury suffered while in custody without a prior showing of physical injury …." 42 U.S.C. § 1997e(e). With respect to Plaintiff's claims against Lt. Hinojosa, Sgt, Perez, and Sgt. Syler, Plaintiff testified that he suffered emotional rather physical injuries. (D.E. 35, pp. 13-20). Plaintiff, therefore, cannot recover compensatory damages with respect to his claims against these defendants because he does not allege that he suffered the requisite physical injuries. *See Steinocher v. Ball*, No. H-19-2205, 2019 WL 2716623, at *2 (S.D. Tex. Jun. 28, 2019). Because Plaintiff only seeks compensatory damages for pain and suffering against Defendants Hinojosa, Perez, and Syler, it is respectfully recommended that his claims against these defendants be dismissed with prejudice as frivolous.

### D. Due Process (Personal Property)

Plaintiff complains that Sgt. Warner learned about certain identifying information regarding Plaintiff which he passed onto other inmates and that, as a result, Plaintiff had around $10 stolen from his trust fund account.

A prisoner has a protected property interest in the funds in his prison account. *Rosin v. Thaler*, 417 F. App'x 432, 434 (5th Cir. 2011). The Fourteenth Amendment of the Constitution provides that no State shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV § 1. The Supreme Court has held that a random and unauthorized intentional deprivation of property does not violate the Due Process Clause if the State provides an adequate post-deprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 534-35 (1984); *Myers v. Klevenhagen*, 97 F.3d 91,

94 (5th Cir. 1996). A claimant must either take advantage of the available remedies or show that the available remedies are inadequate. *Hudson*, 468 U.S. at 534-35.

Texas law provides him with possible post-deprivation remedies. Texas law allows recovery of monetary damages for the loss of property that has been taken without authorization. *See Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994) (in Texas, the tort of conversion fulfills this requirement); *see also Beam v. Voss*, 568 S.W.2d 413, 420-21 (Tex. Civ. App.– San Antonio 1978, no writ) (conversion is the unauthorized and unlawful assumption and exercise of dominion and control over the personal property of another, to the exclusion of, or inconsistent with the owner's rights). In addition, state law specifically provides that inmates may recover up to $500.00 on a claim that the TDCJ lost or damaged personal property. *See* Tex. Gov't Code § 501.007.

A prisoner may bring suit in federal court for property loss only if relief is denied in state court on grounds other than the merits of his claim. *See Thompson v. Steele*, 709 F.2d 381, 383 n.3 (5th Cir. 1983). The burden is on the inmate to show that the post-deprivation remedy is inadequate. *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). Plaintiff does not indicate in his amended or supplemental complaints that he has filed suit in state court pursuant to § 501.007 or for conversion.

Because Texas law provides adequate and available post-deprivation remedies and Plaintiff has not pursued them, the taking of funds from Plaintiff's trust fund account does not state a violation of the Due Process Clause. *See Hudson*, 468 U.S. at 536 (noting that, even when a prisoner's property was intentionally destroyed, such destruction did not violate the Fourteenth Amendment because state law provided the

prisoner with an adequate post-deprivation remedy); *Gillaspie v. Walker*, No. H-18-3249, 2020 WL 1064900, at *2 (S.D. Tex. Mar. 5, 2020) (concluding that an inmate's claim based on the improper deduction of funds from his account for medical fees was not actionable under § 1983 because he did not allege that he had pursued available state law remedies). Accordingly, the undersigned respectfully recommends that Plaintiff's due process claim against Sgt. Warner be dismissed as frivolous and/or for failure to state a claim for relief.

### E.   Supervisory Liability

Plaintiff claims that Lt. Gomez failed to provide him with any help after Plaintiff confronted him regarding a situation where a subordinate officer assaulted and used a taser on Plaintiff. (D.E. 35, p. 24).

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). There is no vicarious or *respondeat superior* liability of supervisors under section 1983. *Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987). *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials). A supervisory official may be held liable only if "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps,* 659 F.3d 440, 446 (5th Cir. 2011).

Plaintiff believes that Lt. Gomez should be held responsible for the actions of the subordinate officer who assaulted Plaintiff. However, accepting Plaintiff's allegations as

true, they indicate that Lt. Gomez had no personal involvement in the events described by Plaintiff. Plaintiff, therefore, has failed to allege a plausible claim against Lt. Gomez in his role as a supervisory official. Accordingly, it is respectfully recommended that Plaintiff's claim against Lt. Gomez be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

  F.  **Grievance Process**

Plaintiff claims that the Sgt. Wilson failed to provide him with any relief with respect to his 100-150 grievances filed at the NCJ. However, a prisoner does not have a constitutional right to a grievance procedure and, therefore, has no due process liberty interest right to having his grievances resolved to his satisfaction. *See Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Accordingly, the undersigned respectfully recommends that Plaintiff's due process claim against Sgt. Wilson with respect to the grievance process be dismissed as frivolous and/or for failure to state a claim for relief.

  G.  **Excessive Force**

Plaintiff claims that Sgt. Brown used excessive force against him. Inmates have a constitutional right to be free from the use of excessive force. *See Anthony v. Martinez*, 185 F. App'x 360, 363 (5th Cir. 2006). To state an excessive force claim, a plaintiff must show that the force was not applied in a good-faith effort to maintain or restore discipline, but was applied maliciously and sadistically to cause harm, and that the injury he suffered was more than *de minimis* but not necessarily significant. *See Hudson v. McMillian*, 503 U.S. 1, 6-7, 10 (1992). The factors to be considered are: (1) the extent of the injury suffered; (2) the need for application of force; (3) the relationship between that need and

the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any effort made to temper the severity of a forceful response. *Gomez v. Chandler*, 163 F.3d 921, 923-24 (5th Cir. 1999).

A prison official's "excessive physical force against a prisoner may constitute cruel and unusual punishment when the inmate does not suffer serious injury." *Hudson*, 503 U.S. at 4. In *Wilkins v. Gaddy*, 559 U.S. 34 (2010), the Supreme Court ruled that a district court "erred in dismissing Wilkins' excessive force complaint based on the supposedly *de minimis* nature of his injuries." *Id.* at 40. The Supreme Court explained that "the core judicial inquiry [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* at 37 (citations omitted).

Plaintiff alleges that: (1) on December 14, 2019, Sgt. Brown assaulted Plaintiff by slamming Plaintiff against the wall and to the ground as well as punching Plaintiff several times; (2) Plaintiff did not fight back or otherwise resist Sgt. Brown; (3) Plaintiff suffered a busted lip, numerous bumps and bruises on his head, and a cracked tooth; and (4) Sgt. Brown's assault also caused Plaintiff to bleed heavily from his mouth. Taken as true, Plaintiff's allegations suggest that Sgt. Brown used force maliciously and sadistically and that Plaintiff suffered more than a *de minimis* injury as a result of the use of force. Thus, it is respectfully recommended that Plaintiff's excessive force claim against Sgt. Brown in his individual capacity be retained.

### H. Deliberate Indifference

Plaintiff appears to claim that certain unidentified medical officials at the NCJ

acted with deliberate indifference to his health. Prisoners are protected from cruel and unusual punishment by the Eighth Amendment. While not mandating a certain level of medical care for prisoners, the Eighth Amendment imposes a duty on prison officials to ensure that inmates receive adequate medical care. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

An Eighth Amendment violation occurs when a prison official is deliberately indifferent to an inmate's health and safety. *Farmer*, 511 U.S. at 834. In order to state a § 1983 claim for denial of adequate medical treatment, a prisoner must allege that prison officials acted with deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

The test for deliberate indifference has both an objective and subjective prong. Under the objective prong, the inmate "must first prove objective exposure to a substantial risk of serious harm." *Trevino v. Livingston*, No. 3:14-CV-52, 2017 WL 1013089, at *3 (S.D. Tex. Mar. 13, 2017) (citing *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006)). To prove the subjective prong of the deliberate indifference test, the inmate "must show both: (1) that the defendant was aware of facts from which the inference of an excessive risk to the [inmate's] health or safety could be drawn; and (2) that the defendant actually drew the inference that such potential for harm existed." *Trevino*, 2017 WL 1013089, at *3 (citing *Farmer*, 511 U.S. at 397 and *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999)).

In the context of medical treatment, the prisoner must show "that prison officials

refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted). Deliberate indifference may be exhibited by prison doctors in their response to prisoners' needs, but it may also be shown when prison officials have denied an inmate prescribed treatment or have denied him access to medical personnel capable of evaluating the need for treatment. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). A "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference [that] *results in substantial harm.*" *Easter*, 467 F.3d at 464 (emphasis in original).

The deliberate indifference standard "is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346. Deliberate indifference is more than mere negligence. *Farmer*, 511 U.S. at 835. "Even proof of gross negligence does not establish deliberate indifference." *Levine v. Taylor*, No. 3:12-CV-186, 2017 WL 1215426, at *7 (S.D. Tex. Mar. 31, 2017) (citing *Whitley v. Hanna*, 726 F.3d 631, 641 (5th Cir. 2013)).

Plaintiff primarily complains about the lack of medical attention he received following the incident on December 14, 2019, when he was assaulted by Sgt. Brown. Plaintiff alleges that Sgt. Brown's actions caused Plaintiff to bleed heavily from his

mouth and to suffer from head bruises and a cracked tooth. According to Plaintiff, however, he was brought to medical and only patted down. (D.E. 35, pp. 27, 36). Plaintiff believes that he should have been taken to the hospital after being assaulted by Sgt. Brown to check for the possibility of a concussion. (D.E. 35, p. 35). Following the assault, Plaintiff's head hurt for four to five days and his bleeding mouth closed after an unspecified period of time. (D.E. 35, p. 37).

Accepting his allegations as true, Plaintiff's allegations indicate that he was taken to medical and examined following the assault. Rather than suggest that he suffered any long-lasting effects or complications from the assault, Plaintiff's allegations indicate that his injuries healed within a period of time. Plaintiff has failed to allege substantial harm as a result of the actions of NCF medical staff or that any medical official acted with the requisite deliberate indifference. At best, Plaintiff's allegations indicate that the NCJ medical staff may have acted with negligence when tending to his injuries, which is insufficient to state a claim for deliberate indifference. *Gobert*, 463 F.3d at 346

Plaintiff further complains that: (1) he was seen by medical only on five or six occasions between September 2019 and February 24, 2020; (2) he generally sought medical attention for his blood pressure and a twisted foot; and (3) some of the nurses acted rudely toward him. Plaintiff acknowledged, however, that he was prescribed blood pressure and nerve medication by NCJ medical doctors and that he was not harmed by any of the actions taken by either NCJ doctors or nurses.

Accepting these allegations as true, Plaintiff has failed to suggest that the actions of any NCJ medical official placed him at substantial risk of serious harm. Plaintiff's

allegations reflect that he was examined on several occasions and prescribed blood pressure and nerve medication by NCJ medical doctors.  Plaintiff provides no specific facts to suggest that NCJ medical officials acted in such a way that would clearly evince a wanton disregard for his serious medical needs.  *Gobert*, 463 F.3d at 346.

Accordingly, the undersigned respectfully recommends that Plaintiff's deliberate indifference claims against the NCJ's unknown medical staff be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

## V.    RECOMMENDATION

For purposes of § 1915A, Plaintiff has stated sufficient facts that, if true, state an excessive force claim against **Sgt. Brown** in his individual capacity.  Accordingly, it is respectfully recommended that this claim be **RETAINED.**  The undersigned will order service as to **Sgt. Brown** by separate order.

For the reasons set forth below, the undersigned further recommends that: (1) Plaintiff's claims against all Defendants in their official capacities be **DISMISSED**; (2) Plaintiff's claim asking for criminal charges to be brought against Sgt. Brown be **DISMISSED**; and (3) Plaintiff's remaining claims against all Defendants be **DISMISSED with prejudice** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

Respectfully recommended this 2nd day of July, 2020.

_____
Julie K. Hampton
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).