UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JULIAN G. SILVAS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL NO. 2:19-cv-376 |
| | § | |
| LT HINOJOSA, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Plaintiff Julian G. Silvas, a former detainee appearing pro se and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is a motion for summary judgment filed by Defendant Sergeant Zackery Brown. (D.E. 71). The referral of this motion to Magistrate Judge Julie K. Hampton is **TERMINATED**. For the reasons stated herein, the Court **GRANTS** Brown's summary judgment motion.

### I. JURISDICTION

The Court has federal question jurisdiction over this civil action pursuant to 28 U.S.C. § 1331.

### II. PROCEDURAL BACKGROUND

Plaintiff's claims in this lawsuit arise in connection with being taken into custody at the Nueces County Jail (NCJ) in Corpus Christi, Texas, on both a new criminal charge and a parole violation. At the Court's direction, Plaintiff presented his claims in a Comprehensive Amended Complaint filed on April 7, 2020. (D.E. 27).

1

Plaintiff named the following NCJ officials in his Comprehensive Amended Complaint: (1) Lieutenant Hinojosa; (2) Sergeant Perez; (3) Sergeant Syler; (4) unknown medical staff; (5) Sergeant Warner; (6) Lieutenant Gomez; and (7) Sergeant Brown. (D.E. 27, p. 3). He sought comprehensive damages and his felonies removed from the record. (D.E. 27, p. 5). Plaintiff subsequently filed a supplemental complaint naming Sergeant Wilson as well as Defendants Hinojosa, Perez, and Brown. (*See* D.E. 30).

On March 10, 2020, Magistrate Judge Hampton conducted a *Spears*[1] hearing, where Plaintiff was given an opportunity to explain his claims. On July 2, 2020, Magistrate Judge Hampton issued a Memorandum and Recommendation (M&R), recommending that the Court only retain Plaintiff's excessive force claim against Brown in his individual capacity. (D.E. 42). The Court subsequently adopted the M&R. (D.E. 53).

On January 28, 2021, Brown filed a motion for summary judgment. (D.E. 71). Plaintiff has filed several responses and objections to the summary judgment motion. (D.E. 77, 79, 84, 86, 87).

## III. SUMMARY JUDGMENT EVIDENCE

Brown offers the following summary judgment evidence:

- Affidavit of Brown (D.E. 71-1, p. 2).
- Affidavit of Daniel Perez (D.E. 71-1, pp. 3-4).
- Inmate Communication Forms (D.E. 71-1, pp. 5-13).

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

- Incident Reports Involving Plaintiff (D.E. 71-1, pp. 14-28).

- December 14, 2019 Medical Records for Plaintiff (D.E. 71-1, pp. 29-30).

- Excerpt of NCJ Inmate Rules and Regulations Handbook (D.E. 71-1, p. 31).

Plaintiff, in turn, offers the following summary judgment evidence:

- Plaintiff's verified Comprehensive Amended Complaint (D.E. 27).

- Transcript of the June 1, 2020 *Spears* Hearing (D.E. 35).

- Plaintiff's Declarations (D.E. 78; D.E. 79, pp. 1-2).

- Affidavits of Plaintiff and Perez as well as portions of the Use of Force/Injury Report and Plaintiff's medical records (D.E. 79-1).

- Plaintiff's Inmate Communication Form, dated December 15, 2019 (D.E. 87-1, p. 1).

- Plaintiff's Inmate Communication Form, dated November 18, 2020 (D.E. 87-1, p. 3).

- Plaintiff's Inmate Communication Form, dated November 24, 2020 (D.E. 87-1, p. 4).

- Plaintiff's Mental Health Records, dated March 3, 2021 (D.E. 87-3).

**A. Use of Force Evidence**

On December 14, 2019, Brown was alerted to an incident involving Plaintiff spitting on another inmate's cell window in an attempt to incite a fight. (D.E. 71-1, p. 2). Brown stated in his affidavit that:

- As he approached Plaintiff's cell, he noticed a liquid appearing to be saliva on the inmate's cell door window.

- He went to Plaintiff's cell and noticed Plaintiff wearing socks wrapped around his hands and his head.

3

- Plaintiff refused his orders to remove the altered clothing items and began to clench his hands into a fist and breathe heavily.

- When he attempted to calm Plaintiff down, Plaintiff responded that he was the sheriff and was mad he could not be released from the jail.

- Plaintiff confessed to Brown that he had spit on the other inmate's cell window door.

- After determining that Plaintiff should be moved to a different unit due to inciting a fight, Brown ordered Plaintiff to gather his possessions.

- Plaintiff refused to comply with his orders.

- He then ordered Plaintiff to stand up and place his hands behind his back.

- Plaintiff responded by standing up, chest bumping Brown, and stating that he would not be moved.

- Brown advised Plaintiff that he would defend himself should Plaintiff attempt any form of threat against him.

- After Brown attempted to place Plaintiff's hands behind his back, Plaintiff intentionally chest bumped him again.

- Brown proceeded to place Plaintiff on the ground and ordered him to place his hands behind his back.

- Plaintiff refused to comply and instead attempted to swing at Brown with his right hand.

- With the assistance of other officers, Brown was able to place hand restraints on Plaintiff.

(D.E. 71-1, p. 2).

In connection with the Use of Force Report, Officers Dzierzanski, Guerrero, and Fielder provided statements reflecting that each of them had assisted Brown in placing

restraints on Plaintiff. (D.E. 71-1, pp. 23-25; D.E. 79-1, pp. 3-4, 6). Brown and two other officers stated that Plaintiff was taken to medical and was cleared of any significant injuries, having only sustained minor redness to the right side of his face. (D.E. 71-1, pp. 2, 23-24). Plaintiff, in turn, testified at the *Spears* hearing that: (1) on December 14, 2019, Brown assaulted him by slamming him against the wall and to the ground as well as punching him five to fifteen times; (2) he did not fight back or otherwise resist; (3) he suffered a busted lip, numerous bumps and bruises on his head, and a cracked tooth; and (4) Brown's assault also caused him to bleed heavily from his mouth. (D.E. 35, pp. 26-29).

  **B.** **Grievance Evidence**

The NCJ Inmate Rules and Regulations permit inmates to file a grievance anytime they have been subjected to violations of their civil rights. (D.E. 71-1, p. 31). For most situations, the NCJ Inmate Rules and Regulations require an inmate to proceed through three informal steps where the inmate writes the duty sergeant, the shift lieutenant, and the pertinent captain. (D.E. 71-1, p. 31).

If the problem is still unresolved, the inmate is directed to "begin the formal grievance procedure by sending a request form to the I.G. (Inmate Grievance) Investigators." (D.E. 71-1, p. 31). Under the NCJ Rules and Regulations, "[a]n inmate request form is not a formal grievance form." (D.E. 71-1, p. 31). Lastly, these rules and regulations direct the inmate to "write straight to the I.G. Office instead of the three supervisors mentioned above" if the grievance issue "concerns allegations of assault by a county employee." (D.E. 71-1, p. 31).

5

On December 15, 2019, Plaintiff completed an Inmate Communication Form (ICF), in which he set forth his assault allegations against Brown. (D.E. 71-1, p. 8). Plaintiff complained that Brown came to his cell, asked what was wrong with him, and told him he would be moved. (D.E. 71-1, p. 8). Plaintiff further wrote that, after he refused to move and stood up, Brown rushed him, slammed him into a wall, and punched him several times causing him to bleed. (D.E. 71-1, p. 8). On the ICF, Plaintiff checked off the box where he requested the services of a grievance officer. (D.E. 71-1, p. 8). Plaintiff's December 15, 2019 ICF includes the following written response by an NCJ officer:

> After careful review of camera footage, you were seen refusing to pack up when being told and then were seen licking another inmate's cell door then seen throwing a liquid substance on another inmate. Sgt. Brown removed you from your cell due to being aggressive. You were seen by medical and cleared with no injuries.

(D.E. 71-1, p. 8).

### C. Medical Evidence

A clinical Progress Note, dated December 14, 2019, reflects that Plaintiff was escorted to the intake nursing unit for evaluation following Brown's use of force. (D.E. 71-1, p. 29). According to the clinical notes, Plaintiff's evaluation revealed: (1) a pea size pink area on his scalp line with no swelling; (2) a nickel size pink area of skin on his left side temporal area with minimal swelling; and (3) Plaintiff refused to permit an evaluation of his mouth and teeth. (D.E. 71-1, p. 30). The clinical notes did not detail any other injury to Plaintiff. (D.E. 71-1, p. 30).

## IV.　SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

In making this determination, the court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The court may not weigh the evidence or evaluate the credibility of witnesses. *Id.* Furthermore, affidavits or declarations "must be made on personal knowledge, [shall] set out facts that would be admissible in evidence, and [shall] show that the affiant or declarant is competent to testify to the matters stated." Fed. R. Civ. P. 56(c)(4); *see also Cormier v. Pennzoil Expl. & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence, . . . a verdict should not be directed." *Anderson*, 477 U.S. at 250-51.

## V. DISCUSSION

### A. Exhaustion

In his summary judgment motion, Brown seeks dismissal of Plaintiff's excessive force claim against him for failure to exhaust his administrative remedies. (D.E. 71, pp. 6-7). The Prison Litigation Reform Act, 42 U.S.C. § 1997e, provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The exhaustion requirement applies to all inmate suits about prison life, whether

involving general circumstances or specific incidents. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Clifford v. Gibbs*, 298 F.3d 328, 330 (5th Cir. 2002). Moreover, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process. *Booth v. Churner*, 532 U.S. 731, 734 (2001); *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). A prisoner must complete the administrative review process in accordance with all procedural rules, including deadlines, as a precondition to bringing suit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). Because exhaustion is an affirmative defense, inmates are not required to plead or demonstrate exhaustion in their complaints. *Jones v. Bock*, 549 U.S. 199, 215 (2006).

Prisoners, however, are only required to exhaust administrative remedies that are actually "available" to them. *Davis v. Fernandez*, 798 F.3d 290, 294 (5th Cir. 2015). An administrative remedy is considered unavailable when officials are "unable or consistently unwilling to provide any relief," the administrative remedy scheme is "so opaque that it becomes, practically speaking, incapable of use" by an ordinary prisoner, or "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation or intimidation." *See Ross v. Blake*, 136 S. Ct. 1850, 1859–61 (2016).

Nueces County has an inmate grievance procedure. (D.E. 71-1, p. 31). According to the NCJ grievance procedure, inmates are allowed to file a grievance anytime they allege they have been subjected to a violation of civil rights. (D.E. 71-1, p. 31). The grievance procedure sets forth an informal process whereby the inmate is directed to contact various

9

NCJ officials to resolve the issue. (D.E. 71-1, p. 31). The grievance procedure also indicates that: "[I]f the grievance concerns allegations of assault by a county employee, then write straight to the I.G. office." (D.E. 71-1, p. 31).

The competent summary judgment evidence presented in this case shows that Plaintiff completed an ICF on December 15, 2019, with respect to his excessive force allegations against Brown. (D.E. 71-1, p. 8). The NCJ grievance procedure specifies, however, that an ICF is not a formal grievance form and that the formal grievance procedure begins by submitting a grievance form. (D.E. 71-1, p. 31).

No evidence has been presented to show that Plaintiff submitted a formal grievance form to a grievance officer with regard to his complaints against Brown. Nevertheless, the competent summary judgment evidence demonstrates that Plaintiff sought to bring his excessive force claim against Brown in accordance with the NCJ grievance procedure. By checking off the "Grievance Officer" box in his December 15, 2019 ICF, Plaintiff properly attempted to bypass the informal process and directly complain to the I.G. office as contemplated by the NCJ Rules and Regulations. *See Milligan v. Nueces Cnty. Texas*, No. 2:18-CV-188, 2019 WL 8323678, at *4 (S.D. Tex. Nov. 19, 2019) (finding that inmates at the NCJ must select "Grievance Officer" on the ICF to bypass the informal grievance procedures on assault claims and contact the I.G. office directly).

Despite following the NCJ procedure, there is no evidence presented showing that NCJ officials facilitated Plaintiff's ability to present his allegations in a formal grievance form. Rather, the competent summary judgment evidence establishes that on December 16,

2019, an NCJ officer responded in an informal fashion to Plaintiff's ICF complaints by effectively denying relief. (D.E. 71-1, p. 8). It is unclear from the evidence presented why Plaintiff received the December 16, 2019 response in the absence of Plaintiff being permitted to submit his allegations through a formal grievance form, especially considering his allegations referenced an assault by an NCJ official.

Plaintiff's complaints as set forth in the December 15, 2019 ICF at first blush appear to place NCJ prison officials on notice of such a claim, and an NCJ official issued a response to such complaints. *See Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004) (explaining that a grievance "should be considered sufficient to the extent that the grievance gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit"). However, with regard to the unusual circumstances arising in this case, factual issues exist as to whether NCJ officials arbitrarily processed Plaintiff's December 15, 2019 ICF through an informal response as opposed to the formal NCJ grievance procedure for considering complaints of assault against NCJ officers.

By handling Plaintiff's complaints through such an informal process, genuine issues of fact exist on the issue of whether NCJ officials intentionally thwarted Plaintiff's ability to exhaust the remedies available to him through the NCJ grievance procedure. In light of these disputed issues of fact as to whether the NCJ grievance procedure was made available to Plaintiff, Brown's summary judgment motion is denied on the issue of exhaustion. The Court now turns to consider the merits of Plaintiff's excessive force claim against Brown.

## B. Qualified Immunity

Brown moves for summary judgment as to Plaintiff's excessive force claim on the grounds he is entitled to qualified immunity. (D.E. 71, pp. 8-12). Government officials performing discretionary duties can respond to § 1983 claims by asserting qualified immunity. *Rich v. Palko*, 920 F.3d 288, 293-94 (5th Cir. 2019) (citing *Haverda v. Hays Cnty.*, 723 F.3d 586, 598 (5th Cir. 2013)).

"Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). Government officials are given "breathing room to make reasonable but mistaken judgments" and "all but the plainly incompetent or those who knowingly violate the law" are protected. *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (citations omitted). Qualified immunity "represents the norm, and courts should deny a defendant immunity only in rare circumstances." *Rich*, 920 F.3d at 294; *Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019) (Courts "must think twice before denying qualified immunity.").

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). When a government official has pled the defense of qualified immunity alleging the actions taken were in good faith and within the scope of discretionary authority, the burden is on the plaintiff to establish that the official's conduct violated clearly established law. *Id*. Plaintiff cannot rest on pleadings but instead must show a genuine issue of material fact concerning

the reasonableness of the official's conduct. *Id*.; *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489-90 (5th Cir. 2001).

To survive summary judgment on the issue of qualified immunity, a plaintiff must satisfy two independent inquiries. First, whether viewing the summary judgment evidence in the light most favorable to plaintiffs, the defendants violated the plaintiffs' constitutional rights. *Freeman v. Gore,* 483 F.3d 404, 410 (5th Cir. 2007); *Delaughter v. Woodall*, 909 F.3d 130, 137-38 (5th Cir. 2018). If the court determines "that the alleged conduct did not violate a constitutional right, [the] inquiry ceases because there is no constitutional violation for which the government official would need qualified immunity." *Lytle v. Bexar Cnty., Tex.,* 560 F.3d 404, 410 (5th Cir. 2009) (citation omitted). If there is a genuine dispute of material fact regarding whether there was a constitutional rights violation, the court then asks whether defendants' actions were objectively unreasonable in light of the clearly established law at the time of the constitutional violation. *Freeman,* 483 F.3d at 411; *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004) (The second prong requires courts to "ask whether the right was clearly established—that is, whether 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'") (citation omitted).

If the court answers both questions in the affirmative, the government official is not entitled to qualified immunity. *Lytle,* 560 F.3d at 410. Courts are permitted to exercise discretion in determining the order in which to analyze the two-part qualified immunity test. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (citations omitted).

At this stage, the qualified immunity inquiry requires a court to "accept the plaintiff's version of the facts (to the extent reflected by proper summary judgment evidence) as true." *Haggerty*, 391 F.3d at 655; *Tolan v. Cotton*, 572 U.S. 650, 651, 657-59 (2014). "If, upon viewing the evidence in the light most favorable to the [plaintiff], reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity." *Id*. ("This inquiry is an objective one, not dependent on the particular officer's subjective beliefs.") (citation omitted).

Plaintiff claims that Brown used excessive force against him on December 14, 2019. Plaintiff's excessive force claim arises under the Fourteenth Amendment because the incident occurred while he was confined at the NCJ during all relevant times as both a pretrial detainee and on a parole violation. *See Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015) (abrogating lower courts' application of Eighth Amendment excessive force standards to pretrial detainees); *Mitchell v. Cervantes*, 453 F. App'x 475, 477 n.1 (5th Cir. 2011) (explaining that an individual arrested for a parole violation could be considered a pretrial detainee rather than a convicted prisoner).

To sufficiently state an excessive force claim, "a pretrial detainee must show only that the force purposefully and knowingly used against him was objectively unreasonable." *Id.* "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The reasonableness of the force used must be assessed "from the perspective and with the knowledge of the defendant officer" and with "deference to policies and practices needed to maintain order and

institutional security." *Id.* at 399–400. In determining the objective reasonableness of an officer's use of force, a court should consider the following factors: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting. *Id.* at 397.

Furthermore, to establish an excessive force claim, a plaintiff must demonstrate that the conduct resulted in more than *de minimis* injury. *See Westfall v. Luna*, 903 F.3d 534, 548 (5th Cir. 2018) (citing *Brooks v. City of W. Point*, 639 F. App'x 986, 990 (5th Cir. 2016)); *see also Galada v. Payne*, 421 F. App'x 460, 462 (5th Cir. 2011) (citing *Glen v. City of Tyler,* 242 F.3d 307, 314 (5th Cir. 2001) (affirming dismissal on summary judgment of pretrial detainee's excessive force claim where he failed to allege he suffered any physical injury)); *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) ("An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." (internal quotation marks omitted)).

Brown contends that, after consideration of the relevant five factors, the evidence demonstrates no excessive force was used against Plaintiff. (D.E. 71, pp. 9-11). He contends, therefore, that Plaintiff has failed to overcome Brown's entitlement to qualified immunity. Plaintiff responds that the evidence presented in this case is sufficient to allow this case to go to trial. (D.E. 77, p. 2-3; D.E. 84, p. 1; D.E. 87, pp.1-2).

15

Brown has submitted competent summary judgment evidence to show that: (1) Plaintiff confessed to Brown that he spit on the other inmate's cell window door; (2) Plaintiff refused to comply with Brown's orders to gather his possessions and move to another cell; (3) Plaintiff actively resisted Brown's attempts to restrain him by chest bumping Brown twice and taking a swing at him; (4) Brown forced Plaintiff to the ground; and (5) other officers assisted Brown in restraining him. (D.E. 71-1, pp. 2, 23-25).

In contrast, Plaintiff testified at the *Spears* hearing that Brown assaulted him by slamming him against the wall and to the ground as well as punching him five to fifteen times and that he did not fight back or otherwise resist. (D.E. 35, pp. 26-29). Plaintiff testified further that Brown's use of force caused him to bleed heavily from the mouth as well as suffer a busted lip, numerous bumps and bruises on his head, and a cracked tooth. (D.E. 35, pp. 26-29). Plaintiff, however, does not substantiate his claims of such serious injuries with medical records or other evidence.

In his affidavit, Brown stated that Plaintiff was taken to medical where it was discovered that he only had minor redness to the right side of his face and was cleared of any injuries. (D.E. 71-1, p. 2). Other officers echoed Brown's testimony in their statements provided as part of the Use of Force investigation. (D.E. 71-1, pp. 23-24). Objective medical records show that Plaintiff was evaluated shortly after the use of force where it was revealed that he only had minor redness on his scalp line and left side of his face with minimal to no swelling reported. (D.E. 71-1, p. 29).

The objective medical records demonstrate that any injuries suffered in connection with the use of force on December 14, 2019, were no more than *de minimis*. *See Gobert v. Caldwell,* 463 F.3d 339, 347 n. 24 (5th Cir. 2006) ("'Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's [civil rights] allegations'"); *Wilburn v. Shane,* 193 F.3d 517, 1999 WL 706141, at *1 (5th Cir. Aug. 20, 1999) (finding it "implausible that the hospital would not have recorded the severe injuries" that plaintiff alleged in an excessive force case); *see also Brooks*, 639 F. App'x at 990 (affirming district court's finding that *de minimis* injuries including abrasions to hands and knees, some pain in the back and neck, and unspecified problems with asthma sustained in the process of being arrested and handcuffed did not support excessive force claim); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (concluding that a sore, bruised ear lasting for three days, was considered to be *de minimis* injuries). Plaintiff, therefore, has no basis for a Fourteenth Amendment excessive force claim due to the lack of an actionable injury.

Furthermore, consideration of the five factors set forth in *Kinglsey* demonstrates that Brown's use of force was objectively reasonable. Plaintiff acknowledged in his December 15, 2019 ICF that: (1) Brown came to his cell and told him he would be moved; and (2) Plaintiff refused to move and instead stood up. (D.E. 71-1, p. 8). Plaintiff's statements in the ICF are consistent with Brown's affidavit testimony, which detailed Plaintiff's refusal to comply with his orders to gather his possessions and move to another cell.

Even assuming that Plaintiff did not actively resist Brown's attempts to restrain him, the unrebutted summary judgment evidence demonstrates in the absence of any significant

injury to Plaintiff that Brown deployed force in a reasonable manner as well as tempered in severity for the purpose of gaining Plaintiff's compliance with his direct orders. Indeed, "[t]he Fifth Circuit has consistently found no excessive force where prison officials employ force against inmates refusing to comply with orders." *Schneider v. Kaelin*, No. C. 12-233, 2013 WL 1867611, at *5 (S.D. Tex. Apr. 21, 2013) (citing *Thomas v. Comstock*, 222 F. App'x 439, 442 (5th Cir. 2007) (per curiam)).

Accordingly, even when viewing the evidence in a light most favorable to Plaintiff, there is no genuine dispute of any material fact regarding whether excessive force in violation of the Fourteenth Amendment was used against Plaintiff on December 14, 2019, by Brown. Thus, Brown is entitled to qualified immunity as well as summary judgment with respect to Plaintiff's excessive force claim.

## VI. CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that Brown's motion for summary judgment (D.E. 71) is **GRANTED** and that Plaintiff's Fourteenth Amendment claim of excessive force against Brown is **DISMISSED with prejudice**.

It is so **ORDERED**.

SIGNED this 17th day of June, 2021.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE